## IN CHANCERY.

LANSING *v.* GOELET.

The plaintiff filed his bill, stating that he borrowed of the defendant $10,000, on a real estate situate in the city of Albany, valued, by two persons selected for that purpose by the defendant, at more than $20,000, to which he afterwards added improvements valued at $4000. That on the 6th day of September 1810, he executed to the said defendant a bond, and, with his wife, a mortgage in fee on the said real estate, for securing the payment of the said $10.000, with interest half-yearly ; and that he paid such interest to the year 1818. That in default of payment, the defendant filed a bill of foreclosure against the said mortgagors ; which having been taken pro confesso, a decretal order was thereupon made by this court for a reference to a master. That a report having been thereon made and confirmed, an order was made by the said court for the sale of the said mortgaged premises ; *but no decree of foreclosure was made in the said cause—* which, the plaintiff avers, left the equity of redemption open. That the mortgaged premises were accordingly sold, and purchased partly by the said defendant, and partly by others. That after the money made payable by the said mortgage had become due. the

plaintiff executed to the defendant a warrant to confess judgment upon the said bond, upon which the defendant caused a judgment to be entered in the supreme court of this state. That after the sale of the said mortgaged premises, the defendant caused a test fi. fa. on the said judgment to issue for $6000, the balance remaining unpaid on the said bond, (the defeudant having received about $6000, the amount of the sales of the mortgaged premises,) to the sheriff of Schoharie county ; by virtue of which the said sheriff levied on several thousand acres of land, or the rents and reversions thereof, which levy is still retained.

The prayer of the bill constitutes it a bill with a double aspect. It is, to be admitted to redeem ; and if that cannot be sustained. to be exempted from ulterior responsibility. It is presented on a general demurrer.

Three points were made by the plaintiff :—

1. That a mortgagee, before foreclosure, has merely a chattel interest in the mortgaged estate.

2. That the sale of that chattel interest cannot affect the equity of redemption.

3. That if the order for sale is deemed a foreclosure, it is a satisfaction of the mortgage debt.

*Plaintiff in person*—That the interest of the mortgagee before foreclosure is a chattel, has been long held, as appears from numerous authorities. (1 Ch. Cas. 283 ; 2 Ch. Cas. 263 ; B. Rep. 200 ; Douglas, 810 ; 2 Vern. 367 ; Prec. in Ch. 11 ; 2 Vern. 193 ; Sir W. Blackstone's Rep. 145 ; Salk. 605.) And the same doctrine was recognized by Chancellor Kent in Wilson v. King, (1 Johns. Ch. Rep. 145 ; 7 Johns. C. Rep. 25 ;) *laying it down broadly, that a mortgagee can do no act to affect the mortgagor's right before foreclosure ;* and accordingly, whenever he speaks of sales on mortgages, he always couples them as a foreclosure and sale. If so, the sale in this case only passed a chattel.

The second point : The common law text is, if the mortgagor takes the land, the mortgagee takes the

money; the one is a full equivalent for the other. (Cro. Car. 331 ; 2 Keb. 387 ; Co. Lit. 332 ; 1 Ch. Cas. 244 ; 2 Atk. 103 ; 8 Co. 116.) On this point all unite; and every modern systematic writer on the subject, Blackstone, Powell and Cruise, in deducing the doctrine of mortgages, express not the least hesitation on the subject as to the correctness of this text.

As to the third point, there is no act of the legislature of this state on the subject of judicial sales, excepting only as to absentee mortgagors. There is no decree of foreclosure in those cases; and the legislators seem to have had this distinction in their eye, by the provision that the master's deed shall have like effect as if executed by the mortgagor and mortgagee.

The English court of chancery held this an open question for a long series of years. The departure from the common law, and the return to it, are to be traced through Mosely, 19 ; Eq. Cas. ab. 317 ; Viner's Ab. Title Mortgages, F. p. 24 ; 2 Dick. 551, 785, 787 ; 2 Bro. Ch. Rep. 125, 126 ; 1 Vern. 257 ; 2 Atk. 103 ; 18 Ves. 83, 197 ; and 1 Ves. & Bea. 223 ; the last two cases in 1806 and 1813.

The common law of this state, from its constitutional limit, is paramount to the most ancient of these cases. On the case of Mondey v. Mondey, on a supposed pre-existing practice in this court, and on the construction that a bill of foreclosure was a proceeding *in rem*, and so conferred jurisdiction over the mortgaged premises, and every person or thing connected with them, the doctrine of judicial sales was bottomed by Chancellor Kent—all manifestly erroneous.

This was adjudged in Kershaw v. Thompson, 3 Johns. Ch. Rep. 387, in 1818.

That sales were not in the course of the common law, has been shewn. On a search recently directed by Chancellor Sanford, it appeared that a strict foreclosure was in the colonial course from the origin of chancery in the colony till the revolution. The origin of the state practice as to judicial sales, has been recognized in the cases adjudged in this state as receiving its start from the adjudication in Kershaw v. Thomp-

son. In that case, that of Yates v. Hinkly was cited as a decision of Lord Hardwicke, 3 Atk. 360, as supporting the doctrine that a bill of foreclosure was a proceeding *in rem.* That case arose on a bill *to redeem,* which was in effect a proceeding *in rem ;* but it became so by the Stat. Geo. 2, ch. 7, and the decree was in strict conformity to that statute.

Henry, for defendant, stated two points :—

1. That there not being a decree of foreclosure where a sale was directed, does not leave the equity of redemption open.

2. That the prosecution for satisfaction by judgment on the bond accompanying the mortgage, and the execution, did not open the equity of redemption.

The master's sale gave effect to the decree as effectually as if made by the mortgagor and mortgagee. Cases of strict foreclosure are of rare occurrence. He had only one during his practice. Sale includes foreclosure. (2 Powell on Mort. 1039, 104, 1059, 1060.) Personal estate was sold to supply deficiency on mortgage. It is the course of the court to exercise power of sale. Debt must be satisfied. (2 Johns. Rep. 490 ; Delabigare v. Bush, 3 Johns. Rep. 169 ; 13 Ves. 84 ; 1 Hopk. 231 ; Livingston's Cas. 103 ; Lansing v. Albany Insurance Company.)—The execution is only for deficiency. Judgment and sale are conclusive. To open the sale, is to restore the pledge ; but this sold to strangers. Statute expressly says it shall be valid. 2 Powell's Ch. 175, Ch. Cas. 136, 2 Dick. 788, cases of judicial sales. 13 Ves. 203, as to sales to third persons. 2 Gall. 250 ; Toon v. White, 2 Dick. 551 ; 3 Johns. Ch. Rep. 227, 380 ; express as to sales. Distinction as to chattel interest, not tenable. Debt is principal, securities merely incidental. A mortgagee may sell his right, but a decree indispensable. Mortgagee is trustee—may sell and pay himself. Worth may be questionable, and value can only be ascertained in the market. If mortgagee permits sale, it is his own fault. Statute confirms master's sale—sheriff's required confirmation. (1 K. & R. I.

N. Y. 443, § 13.) The mortgagee has made his election to have his debt. There have been no appeals.

*Plaintiff in reply*—The English doctrine has been uniform in all its changes, in the admission of the common law rule. The opening admits it was otherwise shut. Plaintiff contends not for opening it, but that it never has been closed. If the sale void, nothing passed, and no rights deducible from it. This is not a case in which mortgagee can be trustee—there is nothing to trust him with : the parties are adverse to each other, and have been so throughout. Practice is merely the habit and rules of court, to give laws construction and effect. not to impugn or alter them.

*August Term*, 1826.

JONES, chancellor, disavowed giving any formal opinion ; barely observing, that the uniform practice, which his recollection supported, was according to the proceedings of the defendant ; that he considered this case as decided both in chancery and the supreme court ; and until those opinions were reversed, he should deem them to be the law of the land.